# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Department of Financial & Professional Regulation v. Walgreen Co.,***
**2012 IL App (2d) 110452**

---

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Petitioner-Appellant, v. WALGREEN COMPANY, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0452 |
| Filed | May 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's grant of respondent's motion to dismiss petitioner's request for the enforcement of its administrative subpoenas seeking the disclosure of any incident reports documenting medication error involving three named pharmacists employed by respondent was affirmed on the ground that the reports at issue were privileged patient safety work product under the Medical Studies Act. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-MR-1760; the Hon. David M. Hall, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellant.

Edward D. Rickert and Mark W. Bina, both of Krieg DeVault LLP, of Chicago, R. Peter Grometer, of Mahoney, Silverman & Cross, LLC, of Joliet, and Dwayne A. Pinon, of Walgreen Company, of Deerfield, for appellee.

Lisa S. Simmons, of Wildman, Harrold, Allen & Dixon LLP, and Michael R. Callahan and James W. Hutchison, both of Katten Muchin Rosenman LLP, both of Chicago, Paul E. Dwyer, Jr., and John B. Moretta, both of Edwards Angell Palmer & Dodge LLP, of Providence, Rhode Island, and Peggy Binzer, of Edwards Angell Palmer & Dodge LLP, of Washington, D.C., for *amici curiae*.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.

Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1      Petitioner, the Department of Financial and Professional Regulation, appeals the circuit court's order granting the motion of respondent, Walgreen Company, to dismiss its petition to enforce its administrative subpoenas. On appeal, petitioner argues that the circuit court erred by granting respondent's motion to dismiss, because: (1) the Patient Safety and Quality Improvement Act of 2005 (the Patient Safety Act) (42 U.S.C. §§ 299b-21 to -26 (2006)) does not prohibit a state regulatory agency from seeking disclosure of any incident reports documenting medication error; (2) the record does not establish that every incident report of medication error maintained by respondent is privileged patient safety work product; and (3) sections 8-2101 to 8-2105 of the Illinois Code of Civil Procedure (Code) pertaining to medical studies (the Medical Studies Act) (735 ILCS 5/8-2101 to 8-2105 (West 2010)) do not apply to pharmacies. Because we determine that the second issue raised by petitioner lacks merit, we affirm.

¶ 2                         I. BACKGROUND

¶ 3      On July 1, 2010, petitioner issued three subpoenas to respondent, requesting "All incident reports of medication error involving" three named pharmacists employed by respondent. On

October 8, 2010, petitioner filed a petition for enforcement of administrative subpoenas in the circuit court. The petition alleged that respondent filed written objections to the subpoenas with petitioner and failed to comply.

¶ 4    Respondent filed a motion to dismiss petitioner's petition pursuant to section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2010)). Respondent argued that the requested documents were privileged under the Patient Safety Act and the Medical Studies Act.[1]

¶ 5    In its motion to dismiss and attached memorandum, respondent argued that the documents sought by petitioner constituted "patient safety work product" within the meaning of section 299b-21(7)(a) of the Patient Safety Act, which included reports that "[were] assembled or developed by a provider for reporting to a patient safety organization and [were] reported to a patient safety organization." Respondent asserted that, when a medication error occurs, its pharmacists are required to complete a report in respondent's own "STARS" system.[2] STARS is used to generate confidential and privileged quality improvement reports, known as STARS reports. Each STARS report is transmitted to the Patient Safety Research Foundation, Inc. (PSRF), which is a federally certified patient safety organization (PSO).

¶ 6    Respondent attached the affidavit of Suzanne Hansen, vice president of pharmacy services for respondent, who stated upon personal knowledge: "[Respondent] does not create, maintain, or otherwise have in its possession documents which are specifically entitled 'incident reports' pertaining to 'medication error.' " Hansen stated that respondent maintains STARS reports that contain information about an "improperly processed or filled prescription that is dispensed to the customer." A STARS report must be created for each such event. The STARS reports are submitted to the PSRF. "The STARS system is maintained electronically and all reporting through the system is considered strictly confidential."

¶ 7    Petitioner's response argued that "the language in the subpoenas is sufficiently broad to demand all incident reports whether they are maintained in the STARS system or separate from the STARS system." Petitioner also argued that the privilege recognized by the Patient Safety Act applied only to documents created exclusively for the purpose of being transmitted to a PSO, meaning that any document retained for a separate purpose is not privileged. Thus, Hansen's affidavit did not eliminate the possibility that nonprivileged documents existed. Further, petitioner argued that the Medical Studies Act did not apply to pharmacies.

¶ 8    In its reply, respondent attached a second affidavit of Hansen stating the following: "Walgreens does not create, maintain, or otherwise have in its possession incident reports

---

[1]Respondent also argued that petitioner's subpoenas were procedurally defective for failing to include witness fees. However, this issue was not a basis for the circuit court's decision and respondent does not raise this issue in its brief.

[2]Respondent explained in its memorandum that "STARS" is an acronym for "strategic tracking and analytical reporting system."

pertaining to medication error other than the STARS reports referenced in my original affidavit. There are no other incident reports pertaining to medication error that are collected or maintained separately from the STARS reporting system."

¶ 9    In petitioner's supplemental response, it disputed Hansen's statements contained in her affidavits. Petitioner attached a counteraffidavit of Scott Golden, a prosecutor for petitioner. Golden stated that he reviewed documents filed by respondent in *Lindsey v. Walgreen Co.*, No. 08 C 3547, 2009 WL 4730953 (N.D. Ill. Dec. 8, 2009), *aff'd*, 615 F.3d 873 (7th Cir. 2010) (*per curiam*). Golden stated that, "as of August 18, 2009, the date on which the documents were filed in the *Lindsey* case, [respondent] maintained and/or collected documents which reference incidents of medication error separate from [respondent's] electronic STARS reporting system." Golden specifically referred to documents that were filed by respondent in *Lindsey* titled "Pharmacy Manager Performance Review," "Case Inquiry Report[s]," and "Loss Prevention Statements." These documents were attached to petitioner's supplemental response. Golden's affidavit concluded:

"Based on my review of the Documents, I dispute the averment of Suzanne Hansen that '[t]here are no other incident reports pertaining to medication error that are collected or maintained separately from the STARS reporting system.' "

¶ 10   After hearing argument of the parties, the circuit court granted respondent's motion to dismiss. The circuit court stated:

"[T]he, quote, incident reports of medication error, end quote, are quote, patient safety work product, end quote under 42 USC, Section 299 B-22. They're privileged, they're protected. Everything requested in the subpoena as a result is privileged and protected."

¶ 11   The circuit court's written order provides:

"[Respondent's] STARS reports are incident reports of medication errors sought by [petitioner] in its subpoenas, and are patient safety work product and are confidential, privileged and protected from discovery under the federal [Patient Safety Act]."

The circuit court's order also states that the Medical Studies Act "applies to pharmacists and pharmacies." Petitioner timely filed this appeal.


¶ 12                                    II. ANALYSIS

¶ 13   Petitioner challenges the circuit court's order granting respondent's section 2-619(a) motion to dismiss. A motion to dismiss under section 2-619(a) admits the legal sufficiency of the plaintiff's complaint but asserts certain defects or defenses outside the pleadings that defeat the plaintiff's claim. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). When ruling on a section 2-619(a) motion, the circuit court must construe the pleadings and supporting documents in a light most favorable to the plaintiff. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). In addition, the circuit court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that may reasonably be drawn in the plaintiff's favor. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). On appeal, the issue is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal [was] proper as a matter of law." *Kedzie &*

*103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review *de novo* a circuit court's decision to grant a section 2-619(a) motion to dismiss. *Id.* at 116.

¶ 14    Petitioner argues that the circuit court erred by granting respondent's motion to dismiss, because the Patient Safety Act does not prohibit it from seeking disclosure of "any incident report documenting a medication error." Petitioner asserts that the record does not establish that every incident report of medication error maintained by respondent is privileged patient safety work product under the Patient Safety Act.

¶ 15    The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The best indication of the legislature's intent is the statutory language, given its plain and ordinary meaning. *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). Where statutory provisions are clear and unambiguous, the plain language as written must be given effect, without reading into it exceptions, limitations, or conditions that the legislature did not express. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008).

¶ 16    The Patient Safety Act "announces a more general approval of the medical peer review process and more sweeping evidentiary protections for materials used therein." *KD ex rel. Dieffenbach v. United States*, 715 F. Supp. 2d 587, 595 (D. Del. 2010). According to Senate Report No. 108-196 (2003), the purpose of the Patient Safety Act is to encourage a "culture of safety" and quality in the United States health care system by "providing for broad confidentiality and legal protections of information collected and reported voluntarily for the purposes of improving the quality of medical care and patient safety." S. Rep. No. 108-196, at 3 (2003). The Patient Safety Act provides that "patient safety work product shall be privileged and shall not be *** subject to discovery in connection with a Federal, State, or local civil, criminal, or administrative proceeding." 42 U.S.C. § 299b-22(a) (2006). Patient safety work product includes any data, reports, records, memoranda, analyses, or written or oral statements that are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization. 42 U.S.C. § 299b-21(7) (2006). Excluded as patient safety work product is "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system [PSO]." 42 U.S.C. § 299b-21(7)(B)(ii) (2006).

¶ 17    Petitioner contends that Hansen's affidavits attached to respondent's motion and response did not establish that respondent's STARS reports were privileged, because the STARS reports could have been created, maintained, or used for a purpose other than reporting to a PSO. Any such STARS reports would not be privileged pursuant to section 299b-21(7)(B)(ii).

¶ 18    Petitioner ignores Hansen's second affidavit, which provided the following:

"Walgreens does not create, maintain, or otherwise have in its possession incident reports pertaining to medication error other than the STARS reports referenced in my original affidavit. There are no other incident reports pertaining to medication error that are collected or maintained separately from the STARS reporting system."

Thus, respondent established that the only documents responsive to petitioner's subpoenas' narrow scope of "incident reports" were STARS reports. Further, Hansen stated in her

affidavit that the STARS reports were transmitted to a PSO. Accordingly, respondent established that its STARS reports were privileged pursuant to section 299b-21(7) of the Patient Safety Act.

¶ 19    Petitioner also argues that it established in its supplemental response that respondent maintained documents that noted instances of medication error other than STARS reports. Petitioner cites to Golden's affidavit, which stated that "[respondent] maintained and/or collected documents which reference incidents of medication error separate from [respondent's] electronic STARS reporting system." In support of Golden's affidavit, petitioner attached documents filed in *Lindsey*. Petitioner contends that the documents included a "Pharmacy Manager Performance Review" with a category for comments regarding "Quality Assurance" that noted "a high number of incidents"; a "Case Inquiry Report" that detailed an employee's errors in both a "Case Description" and a "Facts" section; and several "Loss Prevention Statements" that noted instances of errors in dispensing medications by a particular employee. The record reveals that these documents were about policy violations, *i.e.*, giving out medications for free and failing to follow directions from supervisors. Nothing in these documents constitutes "incident reports of medication error" as requested in petitioner's subpoenas. Thus, the documents are immaterial and do not create a genuine issue of material fact. Accordingly, the circuit court properly granted respondent's motion to dismiss.

¶ 20    Petitioner also argues that the circuit court's finding that STARS reports were privileged was premature, because it should have allowed petitioner to conduct additional discovery. Respondent argues that this argument is forfeited because respondent failed to move for a continuance in the circuit court and file an affidavit stating that it needed additional discovery pursuant to Illinois Supreme Court Rule 191(b) (eff. July 1, 2002).

¶ 21    When a party cannot sufficiently respond to a motion to dismiss because it believes that additional discovery is necessary, it may seek a continuance and obtain additional discovery by filing a Rule 191(b) affidavit. See Ill. S. Ct. R. 191(b) (eff. July 1, 2002); see also *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 224 (2002). If a party fails to file a Rule 191(b) affidavit in the circuit court, it forfeits any argument on appeal that additional discovery was needed and, therefore, the dismissal of its complaint was premature. See *Kleiber v. Freeport Farm & Fleet, Inc.*, 406 Ill. App. 3d 249, 261 (2010) (the court held that the plaintiff forfeited the argument that the granting of summary judgment was premature, because she failed to file a Rule 191(b) affidavit). In this case, petitioner did not request a continuance in the circuit court at the hearing on the motion to dismiss and did not file a Rule 191(b) affidavit stating that it needed to conduct additional discovery to respond to the motion to dismiss. Accordingly, petitioner has forfeited any argument that the granting of the motion to dismiss was premature. See *id.*

¶ 22    Petitioner argues that it was not required to file a Rule 191(b) affidavit, because respondent filed a *Celotex*-type motion (see *Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986)); a motion that argued that petitioner was unable to prove its case. Petitioner states that, when a defendant files such a motion, a plaintiff might not be able to comply with Rule 191(b), because it might not know what the witnesses will testify to before discovery has occurred. Petitioner mischaracterizes respondent's motion. It was not a *Celotex*-type motion.

Rather, respondent's motion affirmatively disproved petitioner's case by introducing affidavits that were uncontroverted and entitled respondent to judgment as a matter of law. Petitioner cites *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682 (2000), to support its argument. In *Williams*, the appellate court held that the circuit court abused its discretion by denying the plaintiffs' request for a continuance to obtain an affidavit from their expert. *Id.* at 693. The appellate court reasoned that Rule 191(b) might not apply when a defendant files a *Celotex*-type motion for summary judgment. *Id.* at 692. In this case, nothing in the record indicates that petitioner requested a continuance. Further, respondent did not file a *Celotex*-type motion to dismiss, but filed a "traditional" motion. See *Williams*, 316 Ill. App. 3d at 688 ("by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test)"). Thus, *Williams* is distinguishable from the case at bar.

¶ 23        Forfeiture aside, further discovery would not cure the defect in petitioner's subpoenas. Petitioner contends that further discovery is necessary because STARS reports could also be maintained outside the STARS reporting system, in, for example, personnel files. However, petitioner's subpoenas specifically requested, "All incident reports of medication error ***." Hansen's affidavits established that the only incident reports pertaining to medication error that respondent possesses are STARS reports. Such reports are not maintained separately from the STARS system, and the STARS reports are transmitted to a PSO. Because petitioner's subpoenas asked for narrowly defined privileged documents and not for what it now seeks or described in its affidavit, *i.e.*, personnel files, further discovery would have been futile.

¶ 24        We note that petitioner also argues that the circuit court erred because it incorrectly determined that the Medical Studies Act applied to pharmacies. We agree with petitioner. The Medical Studies Act provides a privilege for information that is used in the course of internal quality control or medical study only if such "information belong[s] to certain entities and categories of organizations." *Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill. App. 3d 541, 547 (2004). Because pharmacies are not listed in the pertinent section of the Medical Studies Act (735 ILCS 5/8-2101 (West 2010)), the circuit court improperly determined that the statute applied to respondent.

¶ 25                                III. CONCLUSION
¶ 26        The judgment of the circuit court of Lake County is affirmed.

¶ 27        Affirmed.