10 May 2000

No. 3--99--0566

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2000

LORI R. WARD, as Special )  Appeal from the Circuit Court

Administratrix of the Estate )  of the 14th Judicial Circuit,

of MATTHIAS E. WARD, Deceased; )  Rock Island County, Illinois,

and CHARMAINE L. MORSE, as )

Special Administratrix of the )

Estate of STEVEN C. MORSE, )

Deceased, )

)

Plaintiffs-Appellants, )

)

v. )  No. 97--L--77

)

MID-AMERICAN ENERGY COMPANY, )  

an Iowa corporation, )  Honorable

)  Ronald C. Taber,

Defendant-Appellee. )  Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Plaintiff Lori Ward, as special administratrix of the estate of Matthias Ward, and plaintiff Charmaine Morse, as special administratrix of the estate of Steven Morse, appeal from the dismissal of their suit against defendant Mid-American Energy Company.  We reverse and remand.

Facts

Plaintiffs’ complaint was dismissed for failure to state a cause of action pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 1996)).  Accordingly, all well-pleaded facts in plaintiffs’ complaint are accepted as true (
Brackett v. Galesburg Clinic Ass’n
, 293 Ill. App. 3d 867, 689 N.E.2d 406 (1997)); our recitation of the facts is based on the pleadings and the trial court’s order.

On August 12, 1996, 14-year old Matthias and 16-year old Steven were playing catch on the banks of a body of water known as Sylvan Slough.  The slough is adjacent to and flows into the Mississippi River.  The area where the boys were playing is known as a "tail race" area and is located below a dam owned and operated by the defendant.  The boys entered the water to retrieve the ball and were swept up in dangerous currents and drowned.  Plaintiffs alleged that defendant knew that the tail race was a popular wading and swimming area, knew of the existence of treacherous underwater currents, and knew of six previous drownings.  Plaintiffs further alleged that defendant had created the dangerous currents, the currents were not apparent from the surface, and defendant knew the danger was not apparent.  Plaintiffs asserted that defendant was negligent in failing to place or maintain warning signs regarding the dangerous underwater currents.  The trial court dismissed plaintiffs’ complaint on the basis that the dangers presented by a body of water are open and obvious.

Analysis

A motion to dismiss filed pursuant to section 2--615 of the Code attacks the legal sufficiency of the complaint; a reviewing court must determine whether the allegations of plaintiffs’ complaint, construed in the light most favorable to the plaintiffs, are sufficient to establish a cause of action upon which relief may be granted.  
Weatherman v. Gary-Wheaton Bank
, 186 Ill. 2d 472, 713 N.E.2d 543 (1999).  In making this determination, all well-pleaded facts in the complaint and all reasonable inferences flowing therefrom are accepted as true.  
Weatherman
, 186 Ill. 2d 472, 713 N.E.2d 543.  A section 2--615 motion should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the plaintiffs to recover.  
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 660 N.E.2d 863 (1995).  The standard of review from an order granting a section 2--615 motion to dismiss is 
de
 
novo
.  
Weatherman
, 186 Ill. 2d 472, 713 N.E.2d 543.

Under Illinois law, persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.  
Bucheleres v. Chicago Park District
, 171 Ill. 2d 435, 665 N.E.2d 826 (1996).

"In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition.  The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks."  
Bucheleres
, 171 Ill. 2d at 448, 665 N.E.2d at 832.

A body of water, whether it is natural or artificial, is deemed to present an open and obvious danger.  
Jackson v. TLC Associates, Inc.
, 185 Ill. 2d 418, 706 N.E.2d 460 (1998); see 
Bucheleres
, 171 Ill. 2d 435, 665 N.E.2d 826.  The water’s danger is considered to be apparent not only to experienced swimmers, but even to very young children.  
Jackson
, 185 Ill. 2d 418, 706 N.E.2d 460.  However, the existence of an open and obvious danger is not a 
per
 
se
 bar to finding that a landowner has a duty to exercise reasonable care.  
Jackson
, 185 Ill. 2d 418, 706 N.E.2d 460; 
Bucheleres
, 171 Ill. 2d 435, 665 N.E.2d 826.  In determining whether such a duty is owed, a court must still apply traditional duty analysis, which includes consideration of the following factors: the likelihood of injury; the reasonable foreseeability of such injury; the magnitude of the burden of guarding against the injury; and the consequences of placing that burden on the defendant.  
Jackson
, 185 Ill. 2d 418, 706 N.E.2d 460.

With respect to the first factor, the likelihood of injury is generally considered slight when the condition is open and obvious because it is assumed that persons encountering the dangerous condition will appreciate and avoid the risk.
  
Bucheleres
, 171 Ill. 2d 435, 665 N.E.2d 826.  However, "if a danger is concealed or latent, rather than open and obvious, the likelihood of injury increases because people will not be as readily aware of such latent danger."  
Bucheleres
, 171 Ill. 2d at 456, 665 N.E.2d at 836.  Of course, the risk of drowning is inherent to bodies of water (see 
Jackson
, 185 Ill. 2d 418, 706 N.E.2d 460), in part because of the dangers presented by unknown surface or subsurface elements (see 
Lerma v. Rockford Blacktop Construction Co.
, 247 Ill. App. 3d 567, 617 N.E.2d 531 (1993)).  Nevertheless, plaintiffs have alleged that the existence of powerful underwater man-made currents was not apparent from the surface and the danger was not open and obvious.  A dangerous condition is "obvious" when "’both the condition and the risk are apparent to and would be recognized by a reasonable [person]’" exercising ordinary perception, intelligence and judgment.  
Deibert v. Bauer Brothers Construction Co.
, 141 Ill. 2d 430, 435, 566 N.E.2d 239, 241 (1990), quoting Restatement (Second) of Torts §343A, comment 
b
, at 219 (1965).  In this case, while the dangers associated with the water were obvious (strong currents, submerged obstacles, sudden drop-offs, etc.), the 
increased
 risks caused by the dangerous man-made currents were hidden beneath the surface.  Under those circumstances, we believe the likelihood of injury was at least moderate.

The next factor, the reasonable foreseeability of injury, "may be greater or lesser depending on the degree of obviousness of the risks associated with the condition."  
Bucheleres
, 171 Ill. 2d at 456, 665 N.E.2d at 836.  Generally, as the obviousness of the danger increases, the foreseeability of injury decreases, because people are expected to exercise due care and avoid obvious risks.  See generally, 
Bucheleres
, 171 Ill. 2d 435, 665 N.E.2d 826.  Here, despite the obvious dangers associated with bodies of water, the foreseeability of injury was very high.  According to plaintiffs’ complaint, defendant knew of the existence of dangerous currents in a popular swimming and wading area and knew that that danger was not apparent.  Defendant also knew of six previous drownings in the area.  Assuming, as we must, the truth of plaintiffs’ allegations, further injuries seemed not merely foreseeable, but inevitable.

The magnitude of the burden of guarding against the injury was small and the consequences of placing that burden on the defendant are minor.  The burden in this case, based on plaintiffs’ allegations of negligence, was simply to place and maintain signs warning of the dangerous underwater currents.

Based on the factors discussed above, we find that defendant owed a duty to warn plaintiffs’ decedents of the dangerous underwater currents allegedly produced by defendant’s dam.  We make this finding despite the ruling of the court in 
Lerma
 that no duty existed under similar facts.  In 
Lerma
, two children entered the Kishwaukee river near a dam and drowned.  Plaintiffs alleged that the dam altered the natural flow of the river, creating dangerous undercurrents and undertows that were not visible from the surface.  The 
Lerma
 court ruled that the open and obvious nature of the danger made the injuries unforeseeable and thus no duty existed.  In response to plaintiffs' argument that the dangers were beneath the surface and could not be anticipated, and were artificially created rather than natural, the court stated:

"The touchstone of liability *** is not the distinction between natural or artificial but is instead the foreseeability of harm to children. [Citation.]  We reiterate that it is a body of water 
per
 
se
 that presents an obvious risk of drowning, not its attendant conditions, whether surface or subsurface, artificial or natural."  
Lerma
, 247 Ill. App. 3d at 575, 617 N.E.2d at 539; see also 
Torf v. Commonwealth Edison
, 268 Ill. App. 3d 87, 644 N.E.2d 467 (1994) (dangerous underwater currents allegedly created by power company were open and obvious; allegations of turbulent and choppy water plus very presence of power plant should have alerted decedents to danger).

To the extent that 
Lerma
 appears to hold that no duty could 
ever
 exist when the injury involves a body of water, we believe that it has been overruled by 
Jackson
.  In that case, Jackson dove into a lake and allegedly struck a submerged plastic pipe used by the defendant to adjust the water level.  The pipe was not anchored down and its location varied.  In reversing a grant of summary judgment for the defendant, the 
Jackson
 court stated:

"Although a body of water was involved in this case, we do not believe that the open and obvious doctrine is dispositive of Jackson’s claims.  Cases addressing the open and obvious danger of water are premised on the notion that bodies of water pose two particular types of risk; the risk of drowning and the risk of injury from diving into water that is too shallow.  Neither of those risks is at issue here.  The danger in this case, according to Jackson, stemmed from the presence of the submerged pipe, whose location was variable and could not be detected by swimmers.  The existence of that hazard had nothing to do with the inherent characteristics of bodies of water; it stemmed solely from TLC’s conduct."  
Jackson
, 185 Ill. 2d at 426, 706 N.E.2d at 464.

The passage above suggests that liability may attach for injuries caused by hazards in bodies of water where the hazard: (1) could not be detected; (2) was not an "inherent characteristic" of bodies of water; and (3) stemmed solely from the defendant’s conduct.  The allegations of plaintiffs’ complaint, viewed in the light most favorable to plaintiffs, satisfy these criteria.  Plaintiffs alleged that: (1) the existence of the dangerous underwater currents was not apparent from the surface; (2) those powerful currents were man-made; and (3) defendant created the currents.  We recognize, of course, that currents 
are
 an inherent characteristic of bodies of water, particularly rivers.  Nevertheless, plaintiffs specifically alleged that the dangerous conditions existing at the location where plaintiffs’ decedents drowned were the "result of powerful 
man-made
 underwater currents."  We do not believe that plaintiffs’ cause of action is barred merely because the danger allegedly created by the defendant can also occur naturally.  On remand, plaintiffs will still bear the burden of establishing that defendant’s conduct was the proximate cause of the boys’ deaths.

Accordingly, we find that the trial court erred in dismissing plaintiffs’ complaint.  For the reasons stated above, the judgment of the circuit court is reversed.  The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE and HOMER, J.J., concur.